UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JEFFERY COLLINS                                    CIVIL ACTION

v.                                                 NO. 12-2113

WOOD GROUP PSN, ET AL.                             SECTION "F"

ORDER AND REASONS

Before the Court is R&R Boats, Inc.'s motion for summary judgment.  For the reasons that follow, the motion is DENIED.

Background

This case arises from knee, hip, and back injuries allegedly sustained by a safety compliance officer working offshore when, during his transfer from a platform to a crew boat in the Gulf of Mexico, the crane-operated personnel basket in which he was riding made a hard landing onto the boat.

In January 2011 Jeffery Collins was working as a safety and compliance supervisor for Energy Partners/EPL Oil & Gas, Inc.  Over the course of his employment with EPL, Mr. Collins frequently worked with R&R Boats, Inc. and the crew of the vessel the M/V JESSICA FAYE, a vessel owned and operated by R&R Boats.

On January 5, 2011  Mr. Collins was being transferred, along with other personnel, from the ST26D platform to the M/V JESSICA FAYE; the transfer is accomplished by personnel riding in a crane-operated personnel basket.   After the transfer, Mr. Collins

reported that the basket landed "hard" on the vessel.[1]   As a result, he reported that he felt pain in his left knee, low back and right hip.  This, however, is not the incident that forms the basis of his negligence complaint; that incident occurred the next day.

On January 6, the next day, Mr. Collins participated in a Job Safety Analysis, a pre-job safety meeting in which the safety of the day's activities is discussed.  The head of 26A platform operations led the JSA; with respect to the upcoming personnel basket transfer, the loading, approaching, and unloading of the transfer basket was discussed, as well as wind and sea conditions. After the meeting, a written JSA was sent to the crew of the M/V JESSICA FAYE so that the crew could read it and sign off on it prior to the personnel transfer.  Mr. Collins spent the rest of January 6 aboard the platform auditing safety operations in his capacity as EPL's Safety Compliance Supervisor; he observed no cause for concern with the manner in which the crane was being operated.

Later that day[2] as the M/V JESSICA FAYE approached ST26A, the

---

[1]Mr. Collins completed a statement regarding the January 5 incident in which he reported that "there was nothing unusual with the seas or the crane operation we just made a hard landing"; Mr. Collins stated that he lost his balance when the basket landed because he favored his right leg.

[2]Apparently there is some dispute as to whether the transfer occurred during daylight hours, or after dark.

vessel's captain contacted the crane operator, employed by Phoenix Offshore Solutions, L.L.C., Brent Darbonne, to discuss the personnel transfer operation.   In connection with the JSA meeting earlier, Darbonne had sent the JSA to the crew on the M/V JESSICA FAYE for their review.   Here is the protocol for a safe personnel basket transfer from a platform to a vessel:

First, the weather and sea conditions should be assessed to confirm that they are within acceptable tolerances.   Next, the crane operator should confirm that the vessel can maintain a proper position for the transfer.   Once the crane operator confirms that the basket rider is wearing appropriate safety gear and prepared for the lift, the basket is lifted off the platform deck.   The crane operator then raises the basket high enough to clear all obstacles on the platform before booming the basket over the water. After lowering the basket over the water, the crane operator determines the height he deems appropriate to swing the basket over the deck of the vessel.   Once the basket is positioned above the deck of the vessel, the crane operator must pause to observe the vessel's movement in the seas in order to time setting the basket down as gently as possible; the crane operator is solely responsible for deciding when to pause the descent of the personnel basket, to time its landing on a vessel's stern deck.   However, during the transfer, while the crane operator is charged with maneuvering the crane based on his observations, the crane operator

and the vessel must remain in communication by radio with the captain and by hand signals communicated by a signalman on the stern dock of the vessel; the signalman is charged with signaling to the crane operator -- if necessary, based on the signalman's observations during the transfer -- whether, from the vantage point of the vessel, the crane operator should stop, swing out, boom up or down.  Once the basket is set on the deck, an adequate amount of slack should be left in the line to prevent the basket from being jerked from the deck, but not so much that the soft webbing, that makes up the sides of the basket and provides the riders with support, collapses in on itself.

It is undisputed that the wind (15 knots) and sea (three to five feet) conditions were within safe tolerances to conduct the personnel transfer on January 6; the JESSICA FAYE was clear and ready to receive the basket, and properly maintained its position during the lift; the signalman on the JESSICA FAYE, deckhand Philip Marcel, never signaled to the crane operator that he was going too fast.   Nevertheless, according to Mr. Collins' deposition testimony, the transfer went wrong: the crane operator roughly jerked the personnel basket from the platform's deck before swinging it over the side; the personnel basket was positioned over the top of the vessel's stern deck in violation of settled protocol before being lowered far too quickly to the vessel below; instead of pausing the basket 10 to 15 feet above the vessel's deck to time

4

the seas, the crane operator continued to lower the basket until it
made rough contact with the vessel's deck;[3] the crane operator did
not stop letting out line once the basket was on the deck, causing
the basket's webbing (which is intended to support the rider) to
collapse in on itself, which caused Mr. Collins to stumble and fall
inboard into the middle of the basket and suffer the same injuries
that he suffered the previous day, injuring his left and right
knee, lower back and right hip.[4]   When Mr. Collins returned to

---

[3]The crane operator disputes this fact; he states that he
remembers slowing the basket down before landing it.

[4]As noted, the day before, on January 5, 2011 Mr. Collins
similarly had reported a hard landing incident after his transfer
in a personnel basket from the platform to the stern deck of the
JESSICA FAYE. But Mr. Collins' lawsuit seeks to recover only for
the January 6 incident.  In completing a written statement shortly
after the January 6 incident, he stated:

> This incident was similar to the incident that
> occurred on the [sic] 01/05/11.  I was being
> let down to the deck of the crew boat and it
> was dark.  This could have affected the crane
> operator line of sight or depth perception
> causing him to lower the basket and it landing
> hard on the deck of the crew boat.  When the
> personnel basket landed it collapsed on the
> deck.  I fell inboard into the basket this
> time.  The sea condition was high rolling
> waves at this time.  At no time did I feel it
> was unsafe to make the transfer.
> Once I was on the deck of the crew boat the
> deck hand said the crane operator wasn't as
> smooth an operator as the production hands
> were.
> I felt pain in my left knee, right knee and
> lower back and right hip.  I notified the
> production Foreman and the boat crew.  The
> compliance clerk was not available when I
> called.

shore, he sought medical treatment.

On August 17, 2012 Mr. Collins sued Wood Group PSN and R&R Boats, Inc., invoking this Court's maritime and diversity jurisdiction.[5]  Months later, the plaintiff's claims against Wood Group were dismissed upon joint motion.  Thereafter, the plaintiff filed an amended complaint against R&R Boats and added Phoenix Offshore Solutions, L.L.C. as a defendant; the plaintiff alleges that R&R Boats' negligence in operating the vessel, and Phoenix Offshore's negligence in operating the crane, during the basket transfer caused Mr. Collins' injuries.

R&R Boats now seeks summary relief dismissing Mr. Collins'

_____

[5]Notwithstanding the plaintiff's invocation of this Court's admiralty jurisdiction, the parties apparently agreed that this case should be tried before a jury in accordance with the plaintiff's prayer for a jury trial.  The Court notes with some curiosity that there has been no motion practice asking this Court to consider the procedural consequences attendant to the exercise of admiralty jurisdiction, including a non-jury trial.  As the Fifth Circuit has instructed: there is "no right to a jury trial when the complaint contains a statement identifying the claim as an admiralty or maritime claim, even though [another basis for] jurisdiction exists as well."  See TNT Marine Serv., Inc. v. Weaver Shipyards & Dry Docks, Inc., 702 F.2d 585, 587 (5th Cir. 1983)(citing Federal Rule of Civil Procedure 9(h) and noting that there is no right to a trial by jury where the complaint contains a statement identifying the claim as an admiralty or maritime claim); see also Raffray v. Gulf Logistics, LLC, No. 10-1017, 2010 WL 5055849, at *2 (E.D. La. Dec. 2, 2010)(Fallon, J.)(noting that "when a plaintiff properly designates his claim as one that is in admiralty and thereby invokes the court's admiralty jurisdiction..., the court is to adjudicate the claim without a jury").  As it stands, however, this case is scheduled to be tried, with a jury, on December 16, 2013.

claims against it.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress

his claims.   Id.   Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.   Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed.R.Civ.P. 56(c)(2).   Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party.   Anderson, 477 U.S. at 255.

## II.

The parties agree that Mr. Collins' negligence claim against R&R Boats is governed by the general maritime law.[6]

To prove a tort claim under general maritime law, the plaintiff must establish four elements: (1) the defendant owed a duty to the plaintiff to use due care; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the breach of the duty proximately caused the plaintiff's injuries.   Ates v. B&D Contracting, Inc., 487 Fed.Appx. 201, 204 (5th Cir. 2012)(citing Lloyd's Leasing Ltd. v. Conoco, 868 F.2d 1447, 1449 (5th Cir. 1989)).   A party's fault is only actionable if it is the "legal cause" of the plaintiff's injury; this requires more than a but-for causation: it requires that the negligence be a substantial factor in causing the injury.   See In re Great Lakes Dredge & Dock Co., LLC, 624 F.3d 201, (5th Cir. 2010); see also Donaghey v. Ocean

---

[6]More precisely, the plaintiff invokes maritime law in his complaint, but fails in his opposition papers to address any legal standard applicable to his claims against R&R Boats.

Drilling & Exploration Co., 974 F.2d 646, (5th Cir. 1992).
Consistent with these causation principles, the general maritime
law embraces the doctrine of intervening and superseding
negligence.  See Exxon Co. U.S.A. v. Sofec, Inc., 517 U.S. 830,
840-42 (1996)("A party whose fault did not proximately cause the
injury is not liable at all.").[7]  But because issues concerning
proximate and superseding cause involve application of law to fact,
such determinations are left to the fact-finder.  Id. at 840-41.

    Focusing exclusively on the causation element and invoking the
doctrine of superseding negligence, R&R Boats submits that there is
nothing the crew could have done to avert the incident; it was
solely the crane operator's fault that the basket made such a hard
landing and then collapsed in on itself.  However, the plaintiff
counters that a genuine dispute as to a material fact precludes
summary judgment in R&R Boats' favor:  whether the signalman's
failure to signal the crane operator that he needed to slow down or
abort the transfer contributed to the incident.  Viewing the record
favorably toward the plaintiff, the Court agrees; the record

_____

[7]The Supreme Court stated:
    The legal question [presented] is whether a
    plaintiff in admiralty that is the superseding
    and thus the sole proximate cause of its own
    injury can recover part of its damages from
    tortfeasors or contracting partners whose
    blameworthy actions or breaches were causes in
    fact of the plaintiff's injury....  [T]he
    answer is that it may not.
Id. at 840.

suggests that the signalman did not signal the crane operator, and an expert report opines that the deck crew failed in their duty to maintain communication and signal the crane operator when they observed that the crane operator was conducting the crane in an unsafe manner during the personnel basket transfer; according to at least one expert report, the deckhand should have signaled to the crane operator to slow down the transfer if or when the rate of descent became unsafe.

Summary judgment is patently inappropriate.  R&R Boats does not appear to dispute that it had a duty to signal to the crane operator if the speed of descent was unsafe or otherwise improper. Factual disputes persist regarding the rapid rate of descent and whether the failure of the signalman to communicate to the crane operator to stop or slow down caused the plaintiff's injuries.  The crane operator, for his part, maintains that he did not lower the basket in an unsafe manner or at an unsafe speed.  But the plaintiff disputes the crane operator's version of events.  More pertinently for the purposes of resolving R&R Boats' request for summary relief, the plaintiff submits that the crane operator operated the crane in an unsafe manner, including by causing the basket to descend rapidly and failing to pause the basket over the vessel before landing it on deck; the plaintiff also submits that the signalman for R&R Boats failed to signal to the crane operator to abort the transfer or to slow down; the plaintiff points to the

crane operator's deposition testimony in which he states that he received no hand signals from the signalman to indicate that he should adjust his operation.[8]  On this record, R&R Boats is quite obviously not entitled to judgment as a matter of law; whether the signalman failed to signal to the crane operator to slow down or otherwise abort the transfer, and whether this contributed to the cause of the plaintiff's injuries (or, as R&R Boats submits, whether the crane operator's handling of the transfer and in allowing the basket to fall in on itself was the superseding cause of the plaintiff's injuries) must be resolved by the fact-finder at trial.

Accordingly, R&R Boats' motion for summary judgment is DENIED.

New Orleans, Louisiana, November 13, 2013

_____
MARTIN C. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[8]It appears that R&R Boats misstates the record, though presumably not in an attempt to mislead the Court, by contending in its papers (and in its statement of uncontested facts) that the crane operator "recalled that the deckhand gave the appropriate signals during the lift".  In fact, however, according to the portions of the transcript made available to the Court, the crane operator stated that the deckhand knew his signals, but that he did not signal to the crane operator whatsoever during the January 6 transfer.